IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| FRANK DIACO<br>JASON YATES | :<br><br>:<br><br>: | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy - 1 count)<br>18 U.S.C. § 1343 (wire fraud - 3 counts )<br>18 U.S.C. § 1010 (false statements to HUD<br>- 1 count)<br>18 U.S.C. § 2 (aiding and abetting) |

**I N D I C T M E N T**

**COUNT ONE**

THE GRAND JURY CHARGES THAT:

**THE DEFENDANTS**

At all times material to this indictment:

1. Defendant FRANK DIACO owned and operated a real estate appraisal business, Multi Region Appraisals, LLC, in Blackwood, New Jersey.

2. Defendant JASON YATES worked at Multi Region Appraisals, LLC.

**FHA-INSURED MORTGAGES**

3. The Department of Housing and Urban Development ("HUD") was a department of the United States government that administered the Single Family Mortgage Insurance Program to encourage private lenders to provide mortgage loans to home buyers.

4. The Federal Housing Administration ("FHA") was the agency within HUD that administered HUD's mortgage insurance program. For this reason, the loans in the program are often referred to as "FHA-insured mortgages."

5. Under HUD's insurance program, FHA insured home mortgages that private lenders provided to borrowers, thereby protecting the lenders from any loss in the event that the borrower defaulted on the loan.

6. By this means, HUD shifted the financial risk of issuing its insured mortgages from the lender to the taxpayers.

7. HUD had rules, regulations, and guidelines governing the minimum requirements in the documentation of every mortgage loan transaction that was to be FHA-insured.

8. The accuracy and truthfulness of the information contained in the documentation underlying an FHA-insured mortgage loan transaction was vital. Such information was used in the underwriting process, a process that assessed the risk that the loan will go into foreclosure and the extent of the financial loss that might arise from foreclosure. Both the lenders and HUD relied on that information in determining whether a loan was to be FHA-insured. Included among the information that the lender and HUD relied on were the appraisals of the real estate. Should such information be inaccurate or untruthful, then the underwriting process was undermined. Any assessment of the risk of the loan's going into foreclosure and of the possible losses associated with foreclosure would be based on false and inaccurate information. Such an assessment would deny FHA the opportunity to protect taxpayer funds by an accurate evaluation of the mortgage application.

## THE CONSPIRACY

9. From in or about August 2008, through in or about February 2009, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**FRANK DIACO**
**and**
**JASON YATES**

conspired and agreed, together and with others known and unknown to the grand jury, to commit offenses against the United States, that is, devising a scheme to defraud by wire, in violation of Title 18, United States Code, Section 1343, and knowingly making false statements for the purpose of obtaining loans from mortgage lenders with the intent that such loans shall be offered to and accepted by HUD for insurance, in violation of Title 18, United States Code, Section 1010.

## MANNER AND MEANS

10. It was part of the conspiracy that defendants FRANK DIACO and JASON YATES prepared and assisted in preparing appraisals for properties that contained false statements, knowing that the false appraisals were being submitted to mortgage lenders and HUD to obtain approval for mortgages, including FHA-insured mortgages, on the properties.

11. In exchange for making the false appraisal reports, defendants FRANK DIACO and JASON YATES charged double their usual appraisal fees.

## OVERT ACTS

In furtherance of the conspiracy, defendants, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1. On or about August 26, 2008, during a meeting with defendant JASON YATES and a cooperating witness ("CW 1"), CW 1 told defendant YATES that he was looking for an appraiser who was flexible, such as an appraiser who would say that a property was done being rehabbed, when it was not, or that it had tenants, when it did not.  Defendant YATES responded that he was flexible, that he tried to stay under the radar, and that he charged more for those appraisals.

2. On or about September 10, 2008, during a meeting among defendant JASON YATES, an undercover law enforcement agent posing as a real estate investor, and CW 1, CW 1 introduced the undercover agent to defendant YATES as a person who needed defendant YATES's services with properties that had not yet been rehabbed.  The undercover agent told defendant YATES that he owned properties on Stenton and Dorel Street, in Philadelphia, and that he wanted to get appraisals on the properties in order to sell them and squeeze as much cash as he could out of them.  The undercover agent advised defendant YATES that the undercover agent had the properties looked at by another appraiser who was not playing, and that the undercover agent understood that defendant YATES was more flexible.  Defendant YATES responded positively and suggested that the undercover agent list the properties with a realtor on the Multiple Listing Service ("MLS") in order to bring in the value where he needed, to have more of a track record, and to make the transaction smoother so that no one started snooping.  Defendant YATES suggested that they could, for example, list the properties as being repaired and rehabbed to support his appraisals.

3. On or about September 10, 2008, at 6616 Dorel Street, Philadelphia, Pennsylvania, during a meeting among defendants JASON YATES and FRANK DIACO and the undercover agent, defendants DIACO and YATES inspected the property, including the kitchen,

defendant DIACO said that they were going to try to say the property was finished and upgraded to get the undercover agent top numbers on the appraisal, and the undercover agent confirmed for defendants DIACO and YATES that there were no lights at the house.

      4.  On or about September 10, 2008, during a meeting with defendant JASON YATES and the undercover agent, defendant YATES told the undercover agent that the fee for the appraisals on the two properties was $1,500, which was double their normal fee.

      5.  On or about September 10, 2008, at 2107 Stenton Avenue, Philadelphia, Pennsylvania, during a meeting among defendants FRANK DIACO and JASON YATES and the undercover agent, defendants DIACO and YATES inspected the property, including the kitchen, and the undercover agent confirmed for defendants DIACO and YATES that the water was not turned on.  The undercover agent further advised defendants DIACO and YATES that he wanted FHA-insured loans on the Dorel Street and Stenton Avenue properties, to which defendant DIACO responded that he normally charged $450 for an appraisal for FHA loans.  The undercover agent and defendants DIACO and YATES agreed that the undercover agent would then pay $1,800 for the appraisals of both properties.

      6.  On or about September 10, 2008, in Glenside, Pennsylvania, during a meeting with the undercover agent and defendants FRANK DIACO and JASON YATES, the undercover agent paid defendant DIACO $1,800 for the appraisals, defendant YATES confirmed that the realtor was going to list the properties in order to raise the value of the properties in case they were having problems, and defendants DIACO and YATES agreed that the properties should be listed at prices higher than their appraised values.

      7.  On or about September 16, 2008, in Philadelphia, Pennsylvania, during a meeting with the undercover agent and the realtor referred by defendant JASON YATES, the

undercover agent and the realtor discussed the need to list the sale of the properties on MLS in order to make defendants FRANK DIACO and YATES's appraisals more believable. The undercover agent advised the realtor to talk to defendant YATES regarding how the properties should be written up in the MLS.

8. In or about September 2008, defendants FRANK DIACO and JASON YATES prepared and assisted in preparing a false real estate appraisal for 6616 Dorel Street, Philadelphia, Pennsylvania, that falsely represented the house had a refrigerator, range and oven, when it did not.

9. On or about September 23, 2008, defendant FRANK DIACO sent by electronic mail to the undercover agent the appraisal for 6616 Dorel Street containing the false statements.

10. On or about September 29, 2008, during a telephone call, defendant FRANK DIACO told the undercover agent to ignore the appraisal for 6616 Dorel Street because he had included the wrong photographs, and the undercover agent told defendant DIACO that he would wait until defendant DIACO sent the appraisals for both 6616 Dorel Street and 2107 Stenton Avenue before the undercover agent sent the appraisals to his broker.

11. In or about September 2008, defendants FRANK DIACO and JASON YATES prepared and assisted in preparing a revised false real estate appraisal for 6616 Dorel Street, Philadelphia, Pennsylvania, that falsely represented the house had a refrigerator, range and oven, when it did not.

12. In or about September 2008, defendants FRANK DIACO and JASON YATES prepared and assisted in preparing a false real estate appraisal for 2107 Stenton Avenue, Philadelphia, Pennsylvania, that falsely represented the house had a refrigerator, washer, and dryer, when it did not.

13. On or about September 30, 2008, defendant FRANK DIACO sent by electronic mail to the undercover agent the revised appraisal for 6616 Dorel Street and the appraisal for 2107 Stenton Avenue, containing the false statements.

14. On or about October 1, 2008, the undercover agent sent by electronic mail to defendant FRANK DIACO a message that he was sending the appraisals to the broker.

15. On or about October 10, 2008, during a telephone call, the undercover agent told defendant FRANK DIACO that his mortgage broker was pleased with the value of the appraisals. The undercover agent also complained about the realtor wanting the undercover agent to provide more information, and defendant DIACO questioned why since the properties were already listed in MLS.

16. On or about December 23, 2008, the undercover agent sent by electronic mail to defendant FRANK DIACO a message asking defendant DIACO to adjust the lender on the appraisal reports and to resend the appraisals to the mortgage broker, and advising defendant DIACO that this was the last thing needed to close on the properties.

17. On or about December 30, 2008, during a telephone call, the undercover agent advised defendant FRANK DIACO that the broker still needed the appraisals, and defendant DIACO responded that he had sent it yesterday. The undercover agent asked defendant DIACO to send him the appraisal by email, and to change the appraisals for both properties.

18. On or about December 30, 2008, defendant FRANK DIACO sent by electronic mail to the undercover agent a revised false appraisal for 6616 Dorel Street, that falsely represented the house had a refrigerator, range and oven, when it did not.

19. On or about January 14, 2009, during a telephone call, the undercover agent told defendant FRANK DIACO that the mortgage company needed a stipulation in the appraisal that the utilities were turned on, and defendant DIACO told the undercover agent to have the mortgage broker send him by electronic mail the stipulation needed.

20. On or about January 20, 2009, during a telephone call, the undercover agent told defendant JASON YATES that he needed the appraisal to state that the utilities were on or the mortgage company would send out its own appraiser to redo the appraisal, to which defendant YATES responded that was the last thing they wanted and defendant YATES would make certain that defendant FRANK DIACO made the change as soon as he returned to the office.

21. On or about January 20, 2009, the undercover agent sent an electronic mail message to defendant FRANK DIACO stating that he needed the "utilities are on" statement put into the appraisals or the lender would send its own appraiser to do the appraisals, which the undercover agent did not want.

22. On or about January 20, 2009, during a follow up telephone call, defendant JASON YATES told the undercover agent that defendant FRANK DIACO was taking care of the change on the appraisal right then.  Defendants DIACO and YATES asked for the address of the property that needed the change, to which the undercover agent responded by asking them to make the change on both properties, 6616 Dorel Street and 2107 Stenton Avenue.

23. In or about January 2009, defendants FRANK DIACO and JASON YATES amended the real estate appraisal for 6616 Dorel Street, by falsely adding that, at the time of the inspection of the property, the utilities (gas, electric, and water) were on and in working order, when, in fact, the lights were not on.

24. In or about January 2009, defendants FRANK DIACO and JASON YATES amended the real estate appraisal for 2107 Stenton Avenue, by falsely adding that, at the time of the inspection of the property, the utilities (gas, electric, and water) were on and in working order, when, in fact, the water was not on.

25. In or about January 2009, defendants FRANK DIACO and JASON YATES submitted and caused to be submitted to the mortgage broker, Ultra Mortgage LLC, the mortgage lender, American Financial Resources, Inc., and HUD the amended appraisal for 6616 Dorel Street, containing the false statements.

26. In or about January 2009, defendants FRANK DIACO and JASON YATES submitted and caused to be submitted to the mortgage broker, Ultra Mortgage LLC, the amended appraisal for 2107 Stenton Avenue, containing the false statements.

27. In or about February 2009, defendants FRANK DIACO and JASON YATES caused American Financial Resources, Inc. to rely on the false statements in their amended false appraisal for 6616 Dorel Street, in approving an FHA-insured mortgage of approximately $103,632 in the purchase of Dorel Street.

28. On or about February 13, 2009, defendants FRANK DIACO and JASON YATES caused American Financial Resources, Inc. to wire approximately $101,188.43 from JP Morgan Chase Bank in Delaware, to Commerce Bank in New Jersey, to be used for the real estate closing for 6616 Dorel Street.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR

THE GRAND JURY FURTHER CHARGES THAT:

1. Paragraphs 1 through 8 of Count One are incorporated here.

### THE SCHEME

2. From at least in or about August 2008, through in or about February 2009, defendants

**FRANK DIACO**
**and**
**JASON YATES**

devised and intended to devise a scheme to defraud mortgage lenders and the United States and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

3. Paragraphs 10 and 11 of the Manner and Means section of Count One and Paragraphs 1 through 28 of the Overt Acts section of Count One are incorporated here.

4. On or about the following dates, in the Eastern District of Pennsylvania, and elsewhere, defendants

**FRANK DIACO**
**and**
**JASON YATES**

for the purpose of executing the scheme described above, attempting to do so, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description of Wire |
|---|---|---|
| Two | September 30, 2008 | Electronic mail from comcast.net to undercover agent at yahoo.com with Appraisal Report for 6616 Dorel Street |
| Three | September 30, 2008 | Electronic mail from comcast.net to undercover agent at yahoo.com with Appraisal Report for 2107 Stenton Avenue |
| Four | February 13, 2009 | $101,188.43 wire from JP Morgan Chase Bank in Delaware, to Commerce Bank in New Jersey, to be used for the real estate closing for 6616 Dorel Street, in Philadelphia, Pennsylvania |

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 8 of Count One are incorporated here.

2. In or about February 2009, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**FRANK DIACO**
**and**
**JASON YATES**,

for the purpose of obtaining a loan and with the intent that such loan be offered and accepted by HUD for insurance, knowingly made, and aided and abetted the making of, false statements, as described below, in that the defendant caused to be submitted, and aided and abetted the submission of, false documents to HUD, with regard to a mortgage loan for a property on 6616 Dorel Street, in Philadelphia, Pennsylvania, that is, a false appraisal of the property.

All in violation of Title 18, United States Code, Sections 1010 and 2.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**